We'll move on to the final case for argument today, which is United States against Vasquez-Abarca. That's number 18-37-16. Good morning, Your Honors. Good morning, Counsel. Jill Skor for the Defendant Appellate, Mr. Carlos Vasquez-Abarca. The District Court sentenced Mr. Vasquez-Abarca to a sentence of 72 months for the crime of illegally re-entering the United States. That 72-month sentence is a sentence nearly double, 95% of the high end of the applicable guideline range of 30-37 months, which was found to apply to Mr. Vasquez-Abarca. The District Court failed to adequately explain its rationale for a sentence so far above the guidelines range, and that sentence should be overturned. Guideline section 2L.1.2 is a sentencing guidelines provision which applies to the crime of illegal re-entry, and it was agreed that was the appropriate guidelines to use in Mr. Vasquez-Abarca's case. The parties used the 2018 version of guideline section 2L.1.2. The Sentencing Guidelines Commission amended section 2L.1.2 effective in November of 2016. The amendments to that guideline section altered the specific offense enhancements for a defendant's criminal history based upon the sentence imposed and added specific offense enhancements for a prior conviction for an illegal re-entry. At Mr. Vasquez-Abarca's sentencing hearing in 2018, his guidelines calculations for both the offense level and his criminal history category accounted for his prior criminal convictions. Nevertheless, the District Court concluded Mr. Vasquez-Abarca's criminal history, including three prior deportations and subsequent re-entries, his commission of new offenses, particularly traffic violations in conjunction with specific deterrence and protection of the public, warranted an upward departure of around 95% of the high end of the guidelines range. The sentencing guidelines are the result of careful study. They should not be disregarded lightly. Rather, the guidelines should be the starting point for any court in deciding a sentence pursuant to Title 18, United States Code, Section 3553. The sentencing court then elaborated that it found Mr. Vasquez-Abarca's criminal history, particularly his driving offenses in general, to be of great concern to the court. The District Court speculated, without justification, that Mr. Vasquez-Abarca fit into a category of criminal defendants who are likely to flee and endanger the public. In support of that, the government cited a 2008 offense in which Mr. Vasquez-Abarca left the scene of a traffic stop. In that instance, he left on foot. That's not quite the conduct the District Court had in mind. Rather, Mr. Vasquez-Abarca was arrested in 2017. At that time, he was stopped for traffic violations, pulled over, and was compliant with law enforcement officers. Counsel, I thought the District Judge wasn't limiting his thinking to the traffic offenses, though, was he? Yes. We've got repeated deportations and reentries. We've got the defendant, in essence, indicating he didn't think he had done anything wrong. A prior 57-month sentence that was not sufficient to deter yet another reentry. And the 57-month sentence had taken into account the child sexual abuse conviction that had dropped off the calculation by the time of this, but would still be hard to ignore. That's correct, Your Honor. One way that the court could have accounted for Mr. Vasquez-Abarca's criminal history was to take notice of the application note to the 2018 version of Guidelines Section 2L1.2. I'm talking about Application Note 6, which allows the District Court to depart upward based on an inadequate criminal history. The Guidelines also allow for that in Guidelines Section 4A1.3, where the court finds that a defendant's criminal history is not adequately characterized, and the court may depart upward. So you think the judge should have framed all this in terms of departures? I think it would have been incredibly helpful in explaining the sentence that the court imposed. And yet, this court has said, whether one agrees with it or not, time and again, that departures are, at this point, obsolete, and the court has pretty broad discretion under 3553A. That's correct, it does. The issue, Judge, is the court's justification for the sentence. Does he have to justify within the framework of the Guidelines? No, he doesn't. No. No, but the justification should be sufficient enough for this court or an appellate court to understand why such a great departure. How about 57 months didn't work before? That was the explanation that the court provided for Mr. Vazquez-Obarca. Mr. Vazquez-Obarca argues that's not sufficient, particularly in light of the changes that the Sentencing Commission made to Guidelines Section 2L1.2. It sounds to me like I understand you're clinging to the Guidelines here, but in a post-Booker world, I'm not sure that that's as compelling. So, are you arguing that the district court judge's explanation for going above the Guidelines was not sufficiently particularized, or are you arguing that the reasons the court gave don't justify the high sentence? The latter, Your Honor. The court relied upon its speculation regarding Mr. Vazquez-Obarca's danger to the public based on its perception of individuals who drive without valid driver's licenses, which constitute a number of Mr. Vazquez-Obarca's parts. What about the other factors that the court relied upon that Judge Hamilton just identified? Even if what you say about the traffic comment is correct, wouldn't that be sufficient to justify going above? The problem with that, Judge, and it would be on its own if the court provided sufficient explanation. For example, justifying that it believes a departure warrants X number of months above, I'm sorry, that the deterrence factor warrants a sentence above the Guidelines, or the protection of the public or safety based on its findings, which are supported by the facts of the case, warrants such a departure and gave some indication of how great a departure was sufficient. When the district court announced 72 months, though, it did so in the context of synthesizing a whole range of factors. I mean, there's no question that we talked about driving without a valid driver's license, but that's a liner to a whole bunch of other things here. All the points that Judge Hamilton has made, the statement the defendant didn't help himself by telling the probation officer he was doing anything wrong. I mean, there's a whole bunch here, and it's really hard for me to read the transcript and conclude that the 72 months hangs on one factor alone. Which is the basis of the defendant's appeal, that the court didn't provide sufficient explanation to parse out what specifically warranted such a great departure. With that, I'd like to reserve the rest of my time. Okay. Thank you very much. For the government. May it please the court. Enza Tomlinson on behalf of the United States. The district court's imposition of a 72-month sentence was procedurally sound and substantively reasonable. First, the district court did not procedurally err in sentencing the defendant. It started first with an analysis of the correct guideline range. Then the district court thoroughly explained why the sentence was appropriate under the 3553A factors. First, the court discussed the nature and circumstances of this offense, which was illegal reentry. The court stated basically the defendant, over the course of years, had ignored federal law. After three prior deportations, he had illegally reentered again, and that aggravated the circumstances of this offense. The court then went on to discuss the defendant's history and characteristics. He noted that, as Your Honor noted, that it was not just one illegal reentry. It was several different types of offenses, including obstruction of justice, illegal reentry, aggravated criminal sexual abuse of a minor, violation of the Sex Offender Registration Act, and driving with a license revoked on two separate occasions. Those were all felony convictions that the court took into consideration. The court also noted the defendant's character. Specifically, the court stated that the defendant had approximately, I believe it was 11 dependents, that there was no record that the defendant had supported. Further, the district court noted— Apparently, he operated only on cash in his business. I can't speak to that. That's what the PSR said. That's what the PSR said, yes. The district court also noted, as far as the character of the defendant, what he had said to the probation department during the examination by the probation officer, which was the defendant told the probation officer he would not change anything in his life and he didn't think he had done anything wrong. The court obviously considered that in response to the defendant's lack of remorse for his current situation. The court went on and talked about deterrence, the deterrence factor, specifically that 57 months, as Your Honor mentioned, had not deterred the defendant. Then, on top of that, he had come back to the country in violation of his supervised release, and was additionally sentenced to 24 months in the Bureau of Prisons, and that did not deter him. The court cited, I don't believe that if I gave you a lower sentence and then you were deported, I think you would come back. I don't think you would file the law. Clearly, that was the essence of the district court's sentence in this case, that he believed that the defendant would not file the law. It was very important to the district court and his concerns were regarding public safety. He indicated that the defendant had violated his laws, not only the federal laws, but not only through his illegal reentry, but that he continued to drive without a license. He had obstructed justice. He gave alias names and fake names. He failed to register as a sex offender, all in violation of federal and state laws. That being said, the court concluded that the defendant's conduct would create a legitimate threat to public safety. Again, the defendant's own statement worked against himself when he said he wouldn't change anything wrong. So the court's concern was that if he does not believe he did anything wrong, what's to say that he wouldn't do this again? The court also talked about the need to promote respect for the law and provide just punishment. He knew that the 57-month sentence had not worked in the past. He also knew the 24-month sentence had not deterred the defendant, and the defendant had still come back. The district court also did not abuse its discretion in imposing an above-guideline sentence. The judgment was substantively reasonable and within the court's discretion, and well within the 20-year max. The court talked at length about what its concern was with the defendant, and those concerns were reasonable. First, the defendant's lack of respect for the law. Again, not to reiterate, but again, the court discussed several of the defendant's violations of the law and that he believed the defendant's attitude showed that he would break the law again, that the lengthy prison sentences that the defendant had gotten in the past had not deterred him, and that public safety was of his utmost concern, and that three deportations had not stopped the defendant, he had obstructed justice when he was caught, and he had failed to register as a sex offender. It was reasonable for the court to think that the defendant would break the law again, and it was reasonable, this sentence was reasonable in these circumstances to deter the defendant. Your Honors, the court has no further questions. The government requests that you affirm the decision of the district court. Thank you, Ms. Tomlinson. Rebuttal, Ms. Kaur. Members of the court, the sentence imposed by the district court judge in 2018 for the offense committed was a sentence of 72 months. That's a sentence that fell within what would have been the applicable guideline range of 70 to 87 months using the 2001 guidelines range. That sentence, almost more than double the applicable guidelines range in 2018, was well above the recommended range by the guidelines and an abuse of discretion. While a sentencing court is not restricted to sentencing a defendant within a set guidelines range, the sentence which varies substantially from the guidelines range should be adequately justified by the sentencing judge. The justification should correspond to the degree of the court's variance. The greater the variance from the guidelines range, the greater the justification that the district court should provide, particularly in light of a sentence nearly double that of a guidelines range. Thank you. Thank you very much. Thanks to both counsel. The case will be taken under advisement, and the court will be in recess until, I believe, tomorrow.